## MAURY vs. COLEMAN.

1. When a person who is about to purchase a note given for the hire of a slave, applies to the maker for information concerning it, and is assured by the latter that he has no defence against it, this does not preclude the maker, when sued by the purchaser, from setting up a subsequent failure of consideration, arising out of the payee's conduct in receiving the slave, who

ran away before the expiration of the term of hiring, and refusing to deliver him up on demand.

ERROR to the Circuit Court of Sumter.

Tried before the Hon. B. W. HUNTINGTON.

ASSUMPSIT by Coleman against Maury, on an instrument in writing of which the following is a copy:

" $135. On the first of January, 1852, we, or either of us, promise to pay L. D. Phillips one hundred and thirty-five dollars, for the hire of a negro man named April, and to furnish said negro with the usual clothing.

Dec. 30, 1850.      (Signed)      T. F. MAURY.

                                     J. T. HILL."

No pleas appear in the record. The bill of exceptions is as follows:

" The plaintiff offered the above note in evidence, and also the endorsement of the payee. There was no evidence that the plaintiff had given any consideration for the note, except as hereinafter stated. The plaintiff proved that, not long after the date of the note, he called on defendant, and said to him either that he had traded, or was about to trade for the note (which it was witness could not remember), and asked defendant if he had any set-off to it; to which defendant replied, that he had no set-off, and that the note was all right. The note was proved to have been given for the hire of the slave mentioned in it for the year 185 –. The evidence tended to show that Maury treated the slave humanely, but that, about September of the year of hiring, he ran away, and went to his master, the payee, who lived about two miles from Maury; that Maury went to a neighbor (on finding the slave gone), procured dogs accustomed to trailing negroes, and by means of the dogs, and in company with their owner, trailed the slave to his master's house; that on the arrival of Maury on the street before the house of Phillips, the owner of said slave, he, Phillips, came out, and Maury demanded the slave, being free from excitement, and telling Phillips that the slave should go into no one's hands but his own, and should not be treated harshly; but Phillips refused to deliver the slave, and after some conversation they parted. The plaintiff also proved, that the next day Maury and Phillips met in a store in Livingston, when

Maury said to Phillips, if he would surrender to him the slave, and pay for the time he had kept him from his possession, he would take him ; to which Phillips replied, that he had tendered him the slave about an hour after their first interview, when he (Maury) had told him, that, as he could not get the slave when he wanted him, he would not take him, and that he (Phillips) had since hired him out to another for the remainder of the year ; which statement of Phillips (about the tender about an hour after the first interview) Maury did not deny.

"Whereupon, the court charged the jury, that, if the plaintiff applied to the defendant in reference to the note, either before or after its purchase by the plaintiff, and the defendant then informed the plaintiff that it was all right, or that he had no set-off against it, the defendant could not defend against this note, in the hands of the plaintiff, by showing that, after the time of the endorsement, and after the conversation referred to, the negro had run away and come into the possession of the payee, who refused to return him on demand.

"The defendant requested the court to charge the jury, that he had a right from the contract of hiring—a right inherent in the contract, and patent on the face of the note, that he should have the services of the slave for the period of hiring, without molestation by Phillips ; that Coleman took the note subject to this right, and that, if the jury believed that after the plaintiff obtained the note Phillips improperly received the slave and prevented the defendant from having him for the remainder of the hiring, by refusing to deliver him, then the plaintiff could not recover, even though the defendant had, before the wrong of Phillips, told the plaintiff that he had no set-off, and that the note was all right. This charge the court refused to give, and the defendant excepted, as well to the charge of the court as given to the jury, as to the refusal of the court to charge as prayed ;" and he here assigns the same for error.

R. H. SMITH, for plaintiff in error, cited the case of Clements v. Loggins, 1 Ala. 622, and 2 ib. 514.

GIBBONS, J.—The principles governing the questions presented in the present record, were, in our opinion, substantially settled in the case of Clements v. Loggins, 2 Ala. 514. In

that case, Loggins had purchased of one Cooper certain lands'
for which he executed his certain promissory notes, and
received a bond for titles, to be made on the payment of the
purchase money. The notes given out were four in number ;
one for one hundred dollars, payable 1st March, 1837 ; and
three for two hundred dollars each, payable to the said Cooper,
and falling due the 25th day of December, 1837, 1838, and
1839. The first note was paid at maturity. In the summer
of 1838, the plaintiff, Clements, gave the defendant, Loggins,
notice that he had purchased the three notes last falling due,
and inquired if he had any defence against them, or either of
them. To which defendant replied, that he had none, except a
set-off of about one hundred dollars, and that he had said the
same thing to the plaintiff a few days before, when he was
inquiring of him about the notes for the purpose of purchasing
them. This conversation was after another conversation, held
with the said Cooper, in which he had promised to pay all the
notes on his return from Mississippi, and the said Cooper then
ageeed, on his doing so, to make him a title. Some time in
December, 1838, the defendant offered to pay Cooper the amount
due on the land, and demanded title. Cooper admitted that he
could not make title ; that he had never had title in himself ;
that the notes for the purchase money belonged to the plaintiff,
and that, if he would pay him, he would endeavor to make title.
Defendant then told Cooper, he would have nothing more to do
with the land. It further appeared, that the title of Cooper
was a bond for title of one Collins, from whom he had purchased,
and that the purchase money was unpaid to Collins ; Collins
had obtained judgment for the purchase money, and could make
nothing out of Cooper on execution, because he was insolvent.
On this proof, the court says : " The maker of a note, when
applied to by one intending to purchase it, to know if there is
any defence against it, by admitting that he has none, thereby
precludes himself from afterwards setting up any defence, when
sued on the note, which existed at that time within his knowl-
edge, as it would be a fraud on the intended purchaser. But,
we think, he would not be precluded from making a defence
which might subsequently arise out of the original contract;
such, for example, as a total failure of consideration ;" citing
Buckner v. Stublefield *et al.*, 1 Wash. R. 386 ; Hoames v.

Smock, *ib.* 390. " As already remarked, to permit the maker to avail himself of any defence which existed at the time of the application to him for information, would be to countenance a deceit; but, if the note be purchased on the faith of a promise by the maker to pay it, he will be compelled to pay the assignee at all events, on the ground of a contract, of which the purchase of the note would be a sufficient consideration. So, in this case, if the contract was rescinded after the plaintiff acquired title to the notes, from the inability of the vendor to make title, the defendant being ignorant at the time he was applied to by the plaintiff for information respecting the notes of the inability of the vendor to make title, the failure of the consideration would be a valid defence against the notes in the hands of the plaintiff."

We have but to apply the principle here decided to the case at bar, to show that the court erred in its charge to the jury. The doctrine of the charge, as given to the jury, was, that after the plaintiff had bought the note, and after the defendant had said to the plaintiff that the note was all right, and he had no off-set to it, nothing that could subsequently transpire as between the original parties to the note could create a valid defence to the defendant as against the plaintiff. This is the precise question decided in the case cited from 2 Ala. There the rescission of the contract for the sale of land did not take place until long after the plaintiff had acquired the notes, and after a conversation very similar to that which took place between the plaintiff and defendant in the case at bar; and yet the court decided, that the defence could be made, if the defendant had acted fairly and honestly in his replies, which he had given on being applied to by the plaintiff for information in regard to the notes when about to purchase them.

The charge asked by the defendant, in our opinion, asserted a correct proposition of law, and should have been given.

Let the judgment of the court below be reversed, and the cause remanded.